IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MOLLY ANN S.,[1]                          6:18-cv-00572-BR

            Plaintiff,                    OPINION AND ORDER

v.

COMMISSIONER OF SOCIAL
SECURITY,

            Defendant.


**KATHERINE L. EITENMILLER**
Harder, Wells, Baron & Manning, P.C.
474 Willamette St.
Eugene, OR  97401
(541) 686-1969

            Attorneys for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

---

        [1] In the interest of privacy this Court uses only the first
name and the initial of the last name of the nongovernmental
party in this case.  Where applicable, this Court uses the same
designation for the nongovernmental party's immediate family
member.

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**ALEXIS L. TOMA**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2950

        Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Molly Ann S. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) in which the Commissioner denied Plaintiff's applications for Supplemental Security Income (SSI) under Title XVI of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and payment of benefits.

## ADMINISTRATIVE HISTORY

On March 17, 2014, Plaintiff protectively filed her

application for SSI benefits.  Tr. 21, 168-78.[2]  Plaintiff

alleged a disability onset date of May 1, 2010.  Tr. 21, 168.

Plaintiff's application was denied initially and on

reconsideration.  An Administrative Law Judge (ALJ) held a

hearing on November 1, 2016.  Tr. 21, 41-82.  Plaintiff, a

vocational expert (VE), and a medical expert testified at the

hearing.  Plaintiff was represented by an attorney.  At the

hearing Plaintiff amended her alleged disability onset date to

March 17, 2014.  Tr. 21, 46.

On December 7, 2016, the ALJ issued a partially favorable

decision in which she found Plaintiff became disabled and is

entitled to benefits starting on June 2, 2015.[3]  The ALJ,

however, found Plaintiff was not disabled and not entitled to

benefits between March 17, 2014 and June 2, 2015.  Tr. 21, 29.

On December 21, 2016, Plaintiff requested review by the

---

[2] Citations to the official Transcript of Record (#10) filed by the Commissioner on October 30, 2018, are referred to as "Tr."

[3] Although Plaintiff amended her alleged disability onset date to March 17, 2014, the ALJ considered the claim from the initial alleged onset date of May 1, 2010.  Tr. 23-27.  The relevant period, however, is from March 17, 2014, which is the amended alleged onset disability and application date, to June 2, 2015, which is the established onset disability date.

Appeals Council.  Tr. 166-67.  On January 29, 2018, the Appeals

Council denied Plaintiff's request to review the ALJ's decision,

and the ALJ's decision became the final decision of the

Commissioner.  Tr. 1-3.  *See Sims v. Apfel*, 530 U.S. 103, 106-07

(2000).

On April 4, 2018, Plaintiff filed a Complaint in this Court

seeking review of the Commissioner's decision.


## BACKGROUND

Plaintiff was born on June 3, 1960.  Tr. 168.  Plaintiff

was 55 years old on her disability onset date of June 2, 2015.

Tr. 27.  Plaintiff has at least a high-school education.

Tr. 27, 200.  Plaintiff has past relevant work experience as a

babysitter, grounds guard, and clean-up worker.  Tr. 50-52, 74.

Plaintiff alleges disability due to a broken tailbone, back

problems, anxiety, and depression.  Tr. 84.

Except as noted, Plaintiff does not challenge the ALJ's

summary of the medical evidence.  After carefully reviewing the

medical records, this Court adopts the ALJ's summary of the

medical evidence.  *See* Tr. 25-27.

## STANDARDS

The initial burden of proof rests on the claimant to
establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110
(9th Cir. 2012).  To meet this burden, a claimant must
demonstrate her inability "to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which . . . has lasted or can be expected to
last for a continuous period of not less than 12 months."  42
U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when
there is ambiguous evidence or when the record is inadequate to
allow for proper evaluation of the evidence.  *McLeod v. Astrue*,
640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,*
276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.  42
U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*,
682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is
"relevant evidence that a reasonable mind might accept as
adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11
(quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690
(9th Cir. 2009)).  It is more than a mere scintilla [of

evidence] but less than a preponderance.  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for evaluating a claimant's testimony, resolving conflicts in the medical evidence, and resolving ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).


## **DISABILITY ANALYSIS**

### I.   **The Regulatory Sequential Evaluation**

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity (SGA).  20 C.F.R. § 416.920(a)(4)(i).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. § 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*,

659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. § 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines (or the grids) set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since May 1, 2010, Plaintiff's

original alleged disability onset date.  Tr. 23.

At Step Two the ALJ found Plaintiff has the severe impairments of degenerative disc disease, fracture of the coccyx, microscopic hematuria, and depression.  Tr. 23.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 24.  The ALJ found Plaintiff has the RFC to perform light work with the following limitations:  can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can never climb ladders, ropes, or scaffolds; and cannot tolerate exposure to extreme cold or vibrations or to workplace hazards such as machinery and unprotected heights. The ALJ also found due to Plaintiff's mental-health impairments, pain, and the side-effects of medication, Plaintiff can understand, remember, and carry out only short and simple instructions and can only make simple, work-related judgments and decisions.  Tr. 24.

At Step Four the ALJ concluded Plaintiff is unable to perform her past relevant work.  Tr. 27.

At Step Five the ALJ found prior to June 2, 2015, Plaintiff could perform other jobs that exist in the national economy such

as electronic worker, basket-filler, and garment-sorter.
Tr. 28.  Accordingly, the ALJ found Plaintiff was not disabled
before June 2, 2015.  Tr. 29.  The ALJ, however, found
Plaintiff's age category changed on June 2, 2015; there were not
any jobs in the national economy that Plaintiff could perform
after that date; and, therefore, Plaintiff was disabled on
June 2, 2015, through the date of the ALJ's decision
(December 7, 2016).  Tr. 29.


## DISCUSSION

Plaintiff contends the ALJ erred when she failed (1) to
provide clear and convincing reasons for discounting Plaintiff's
subjective symptom testimony; (2) to provide clear and
convincing reasons for rejecting the medical opinions of Peter
Kosek, M.D., Plaintiff's treating physician, and Keith Holan,
M.D., the medical expert who testified at the hearing; and
(3) to consider properly the lay-witness testimony of Rick
Slabaugh, Plaintiff's husband.

**I.   The ALJ did not err when he found Plaintiff's testimony was not fully credible.**

Plaintiff contends the ALJ erred when she failed to provide
clear and convincing reasons for discounting Plaintiff's symptom
testimony.

**A.    Standards**

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  The claimant is not required to show that her "impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Garrison*, 759 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  A claimant is also not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Id*.

If the claimant satisfies the first step of this analysis and there is not any affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at

1014-15.  *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").  General assertions that the claimant's testimony is not credible are insufficient.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007).  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

## B.  Analysis

The ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not fully supported" by the medical record or by her reported activities.  Tr. 25, 26.

As noted, Plaintiff alleged she is disabled due to a broken tailbone, back problems, anxiety, and depression. Tr. 84, 199.  Plaintiff testified she has not worked since March 2010.  Tr. 49.  She stated she drove once every two weeks to grocery shop and has difficulty lifting and carrying the groceries.  Tr. 58.  Plaintiff testified she had a vegetable

garden, but her ability to tend the garden was affected by her pain level, and she worked in the garden for 15 minutes per day at most. Tr. 61-62. In her Function Report Plaintiff indicated she could sit for 15 minutes at a time and would then have to stand up or lie down. Tr. 223.

Plaintiff also testified she can stand for about 30 minutes at one time and for a total of three hours in an eight-hour day, but she cannot maintain that level of functioning every day and would require additional pain medication. Tr. 63. She also stated if she has to lift 20 pounds "on and off" throughout the day, she would "have to take a whole lot of pain medications." Tr. 64-65. She also testified when her legs start hurting, she rests in a typical day for at least an hour before being able to work again for half an hour and rests again for another half hour. Tr. 65.

Plaintiff also testified her pain medication affects her focus, concentration, and memory. Tr. 57-58, 66.

## 1. Medical Evidence

The ALJ concluded the medical record does not support the reported severity of Plaintiff's symptoms. For example, imaging of Plaintiff's lumbar spine in May 2010 showed "mild facet joint degenerative disease with straightening of the

lumbar lordosis." Tr. 25, 590. MRIs in 2011 showed "mild disc bulge without neurological involvement," sacrum bruising, and a previous coccyx fracture. Tr. 25. An MRI of Plaintiff's lumbar spine in September 2014 showed mildly progressive multilevel degenerative changes with some neurological involvement. Tr. 25, 446-47. The ALJ acknowledges musculoskeletal examinations revealed some tenderness to palpation, but noted Plaintiff has a normal gait; full range of motion; full muscle strength; intact sensation and reflexes; and positive straight-leg raising on the right, but a negative indication on the left. Tr. 25. The ALJ acknowledges Plaintiff "tried multiple treatment modalities including steroid injections, gabapentin, muscle relaxers, and a TENS unit, as well as over-the-counter and prescription pain medication." The ALJ notes, however, that Plaintiff had "some reported improvement of her symptoms, and in fact, her doctor planned to wean her medications down." Tr. 26. The effectiveness of treatment or medication is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3). A favorable response to conservative treatment undermines a claimant's reports of disabling pain or limitations. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008).

### 2. Activities of Daily Living

The ALJ also discounted Plaintiff's symptom testimony based on her reported activities. Tr. 26. For example, the ALJ notes Plaintiff could perform adequate self-care, take care of her son, prepare simple meals, do household chores, and go to the store. Plaintiff also indicated she engaged in canning activities. Tr. 26. Daily activities are a proper ground for gauging or determining the reliability of a claimant's subjective allegations. *See Molina*, 674 F.3d at 1113 ("[e]ven when those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent they contradict claims or a totally debilitating impairment").

Although Plaintiff's argument constitutes an alternative interpretation of the evidence contained in the record, such an alternative interpretation is not sufficient. As long as there is substantial evidence to support the ALJ's interpretation of the evidence and that interpretation is based on correct legal standards, the court must uphold the ALJ's determination. *See Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

On this record the Court concludes the ALJ did not err when he discounted Plaintiff's symptom testimony and found it was not fully credible because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so.

## II. The ALJ erred when he failed to provide clear and convincing reasons to reject the medical opinions of Drs. Kosek and Holan.

Plaintiff contends the ALJ erred when he rejected the opinions of Dr. Kosek, Plaintiff's treating physician, and Dr. Holan, the medical expert who testified at the hearing.

### A. Standards

"In disability benefits cases . . . physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability — the claimant's ability to perform work." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "In conjunction with the relevant regulations, [courts] have . . . developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008). Specifically, the court must "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Garrison*, 759 F.3d at 1012. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Id.* Although the opinion of a treating physician is entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a nonexamining physician. *Ryan,* 528 F.3d at 1198. "The weight afforded a nonexamining physician's testimony depends 'on the degree to which [he] provide[s] supporting explanations for [his] opinions.'" *Id.* (quoting 20 C.F.R. § 404.1527(d)(3)).

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* Even when contradicted, a treating or examining physician's opinion is still owed deference and will often be "entitled to the greatest weight . . . even if it does not meet the test for controlling weight." *Orn v. Astrue,* 495 F.3d 625, 633 (9th Cir. 2007). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting

clinical evidence, stating his interpretation thereof, and
making findings." *Reddick,* 157 F.3d 715, 725 (9th Cir. 1998).
"The ALJ must do more than state conclusions.  He must set forth
his own interpretations and explain why they, rather than the
doctors' are correct."  *Id.* (citation omitted).

### B.   Analysis

#### 1.   Dr. Kosek

Dr. Kosek has been Plaintiff's treating physician
since 2010.  On October 7, 2016, he completed a Medical
Evaluation form regarding Plaintiff's lumbosacral radiculopathy
and coccygeal pain.  Tr. 555-56.  Dr. Kosek indicated Plaintiff
was not capable of performing either medium- or light-exertion
work and stated Plaintiff's medically determinable impairments
are sufficiently severe that she is unable to maintain a regular
work schedule for "more than 4 days per month."  Tr. 556.

The ALJ gave partial weight to Dr. Kosek's
opinion and agreed Plaintiff "would be unable to perform medium
work."  Tr. 27.  The ALJ, however, rejected the remainder of
Dr. Kosek's opinion on the ground that he "provides no support
or explanation for his opinion regarding [Plaintiff's] ability
to perform light work or the need for significant workplace
absences."  Tr. 27.  The ALJ also noted "these limitations are

inconsistent with the doctor's own treating records which show
normal strength and normal range of motion with no guarding."
Tr. 27, 560.

The Commissioner asserts Dr. Kosek's opinion is
merely a check-box report without explanation, and, therefore,
the ALJ may properly reject it.  See *Molina v. Astrue*, 674 F.3d
1104, 1111 (9th Cir. 2012)(the ALJ may reject a "check-off
report that does not contain any explanation of the bases" for
the physician's conclusions).  The ALJ, however, may reject the
physician's opinion only with "substantial evidence"; *i.e.*,
"such relevant evidence as a reasonable mind might accept to
support a conclusion." *Valentine v. Comm'r Soc. Sec. Admin.*,
574 F.3d 685, 690 (9th Cir. 2009).  To support her conclusion
that Dr. Kosek's opinion was not substantiated by his own
treating records, the ALJ pointed to only one of Dr. Kosek's
chart note dated October 7, 2016, and did not cite to any other
evidence in the record.  Tr. 27, 560.  The record, however,
reflects other evidence that supports Dr. Kosek's opinion.  For
example, multiple spinal examinations by Dr. Kosek in 2014
showed Plaintiff had tenderness over the trochanteric region;
sacroiliac joint; gluteal, sacrum, and lumbar regions; and
bilateral piriformis notch.  Tr. 405, 398-99, 393, 544-45,

537-38.  In May 2014 Dr. Kosek noted Plaintiff had increased

bilateral hip, leg, and foot pain; burning sensation in her

buttocks and pelvic region; and increased pain with sitting

despite Plaintiff's compliance with prescribed medications.

Tr. 397-99.  In August 2014 Dr. Kosek noted Plaintiff had

increased left hip and leg pain with numbness in her foot and

had difficulty walking or standing for prolonged periods.

Tr. 391.  In February 2015 Dr. Kosek noted Plaintiff continued

to have hip pain radiating down her legs.  Tr. 536-38.  In May

2015 Dr. Kosek also documented Plaintiff's worsening pain and

inability to increase her activity overall due to pain despite

medications.  Tr. 529-31.

On this record the Court concludes the ALJ erred

when she failed to provide clear and convincing reasons

supported by substantial evidence in the record for discounting

the opinion of Dr. Kosek.

### 2.  Dr. Holan

Dr. Holan reviewed Plaintiff's records at the

request of the Social Security Administration and testified at

the administrative hearing on November 1, 2016.  Tr. 68-73.

Dr. Holan testified Plaintiff has severe impairments of

degenerative disc disease, impaction fracture at the coccyx,

microscopic hematuria, and depression.  Tr 68-69.  The

Commissioner contends Dr. Holan's statements were not

"imperative," "definitive," or "specific" and that the ALJ may

reject such opinion evidence when it is inconsistent with other

evidence in the record.  Def.'s Brief (#15) at 12-13.

Dr. Holan identified Plaintiff's functional

limitations caused by her severe impairments:

> [O]ccasionally lifting and carrying 20 pounds,
> frequently lifting and carrying 10 pounds,
> standing and/or walking for six hours in an
> eight-hour day, sitting for six hours in an
> eight-hour day.  The pushing and pulling will be
> [INAUDIBLE] within the weight restriction I just
> mentioned.  Postural limitations would include
> occasionally climbing ramps or stairs; never
> climbing ladders or scaffolds; occasionally
> balancing, occasionally stooping, occasionally
> kneeling, occasionally crouching, and
> occasionally crawling.  There are no
> manipulative, no visual, and no communicative
> limitations.  The environmental limitations that
> I feel are present will include avoiding
> concentrated exposure to extreme cold, to
> vibrations, and to hazards, such as unprotected
> heights.

Tr. 70.  Dr. Holan also testified Plaintiff takes "a lot of

medications" that are "closely monitored by a pain management

consultant" and are "being handled appropriately."  Tr. 71.

Dr. Holan testified these medications "might be expected to

interfere with [Plaintiff's] ability to concentrate or to

perform tasks at a rapid pace."  Tr. 72.  He also testified

Plaintiff would experience "periodic pain flares" that would create work absences.  Tr. 72.  Specifically, Dr. Holan testified he had "no reason to doubt" Dr. Kosek's opinion that Plaintiff "would be expected to miss four or more days per month" based on her impairments and that "most people taking this level of pain - - medications are not working."  Tr. 73. Although Dr. Holan appears to have misinterpreted Dr. Kosek's statement that Plaintiff is unable to maintain a regular works schedule "for more than 4 days per month," Dr. Holan generally agreed with Dr. Kosek's conclusions regarding Plaintiff's condition as demonstrated in his opinion that Plaintiff would experience "periodic pain flares" that would create work absences.

Although the ALJ gave "[f]ull credit" to Dr. Holan's opinion regarding Plaintiff's diagnosis, the ALJ gave "little weight" to his opinion that Plaintiff would miss more than four days of work per month based on Plaintiff's "conservative treatment history."  Tr. 26.  The ALJ, however, did not provide any explanation as to why Dr. Holan characterized Plaintiff's treatment as "conservative."  As noted, the record reflects Plaintiff "tried multiple treatment modalities" in addition to high levels of prescription pain medications.  Tr. 26.  In

summary, the ALJ does not point to substantial evidence in the record that contradicts the testimony of Dr. Holan.

Accordingly, the ALJ erred when she failed to provide clear and convincing reasons supported by substantial evidence in the record for discounting the medical opinion of Dr. Holan.

## III. The ALJ erred when she discounted the lay-witness statements, but such error was harmless.

Plaintiff contends the ALJ erred when she failed to provide germane reasons for discounting the lay-witness statements of Rick Slabaugh, Plaintiff's husband, regarding Plaintiff's limitations.

### A. Standards

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001). The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1054 (9th Cir. 2006).

Germane reasons for discrediting a lay-witness's testimony include inconsistency with the medical evidence and the fact that the testimony "generally repeat[s]" the properly

discredited testimony of a claimant. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). *See also Williams v. Astrue*, 493 F. App'x 866 (9th Cir. 2012).

### B.    Analysis

On June 2, 2014, Rick Slabaugh submitted a written Third-Party Function Report. Tr. 231-38. He reported Plaintiff had difficulty standing and sitting for "very long" due to pain and had to lie down "quite a bit through the day." Tr. 231. He also reported Plaintiff was able to complete household tasks, to garden, and to prepare meals with frequent breaks between active periods. Tr. 232, 235.

The ALJ gave "partial weight" to Rick Slabaugh's statements regarding Plaintiff's limitations, but the ALJ did not identify any basis for discounting Rick Slabaugh's testimony. Tr. 26.

The Commissioner argues Rick Slabaugh's statements were "analogous" to the statements of Plaintiff that the ALJ discredited. When the ALJ errs in considering lay-witness evidence, the error is "harmless where the same evidence that the ALJ referred to in discrediting [the claimant's] claim also discredits [the lay-witness's] claims." *Molina*, 674 F.3d at 1122.

On this record the Court concludes the ALJ did err
when he discounted the lay-witness statements of Rick Slabaugh
because she did not provide germane reasons for doing so.  The
Court, however, finds this error was harmless because Rick
Slabaugh's testimony was similar to Plaintiff's testimony that
the ALJ discredited earlier.

### REMAND

The Court must determine whether to remand this matter for
further proceedings or to remand for the calculation of
benefits.

The decision whether to remand for further proceedings or
for immediate payment of benefits generally turns on the likely
utility of further proceedings.  *Carmickle*, 533 F.3d at 1179.
The court may "direct an award of benefits where the record has
been fully developed and where further administrative
proceedings would serve no useful purpose."  *Smolen*, 80 F.3d at
1292.

The Ninth Circuit has established a three-part test "for
determining when evidence should be credited and an immediate
award of benefits directed."  *Harman v. Apfel*, 211 F.3d 1172,
1178 (9th Cir. 2000).  The court should grant an immediate award

of benefits when

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

As noted, the Court concludes the ALJ failed to provide legally sufficient reasons supported by substantial evidence in the record for discounting the opinions of Drs. Kosek and Holan. The ALJ did not cite to any substantial evidence in the record to support a contrary determination, and it is clear from the record that the ALJ would be required to find Plaintiff disabled were such evidence credited.

The Court, therefore, remands this matter for the immediate calculation and payment of benefits for the period from March 17, 2014, the date of Plaintiff's disability onset, to June 2, 2015, the date the ALJ determined Plaintiff became disabled.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and payment of benefits.

IT IS SO ORDERED.

DATED this 11th day of June, 2019.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States Senior District Judge